Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
(855) 384-3262

Attorney for Plaintiff and Putative Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY FABRICANT individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNSET WEST LEGAL GROUP, PC<br>and<br>QUINTESSA LLC D/B/A THE INJURY HELP NETWORK<br><br>Defendants. | Case No. 2:24-cv-04264-FLA-MAA<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTION AND DAMAGES**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Terry Fabricant ("Mr. Fabricant"), by his undersigned counsel, for this Amended class action complaint against Sunset West Legal Group, PC ("Sunset") and Quintessa LLC d/b/a The Injury Help Network ("Quintessa") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

- 1 -
COMPL.
*Fabricant v. Sunset West*

## I.   INTRODUCTION

1.      <u>Nature of Action</u>: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      This case involves a campaign by Sunset to generate personal injury leads for its law firm using vendors like Quintessa to place illegal robocalls in alleged violation of the TCPA.

3.      Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.    PARTIES

4.  Plaintiff is an individual.

5.  Defendant Sunset West Legal Group, PC is a California corporation located in this District.

6.  Defendant Quintessa LLC, which does business under the fictitious name "The Injury Help Network," is an Oklahoma City-based provider of motor vehicle accident leads for attorneys.

## III.    JURISDICTION AND VENUE

7.  <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.  <u>Personal Jurisdiction</u>: This Court has general personal jurisdiction over Defendant Sunset because it is headquartered and has its principal place of business in this District. This Court has specific personal jurisdiction over Quintessa because it contracted with a corporation headquartered in this District to send illegal robocalls for and generate leads which would be performed in this District.

9.  <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred from this District.

## IV.   FACTS

**A.    The Enactment of the TCPA and its Regulations**

10.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11.    The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

13.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations

implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**B.     Defendant's Unsolicited Pre-Recorded Telemarketing to Plaintiff**

15.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16.     Plaintiff's cellular telephone number is (818) XXX-XXXX.

17.     Mr. Fabricant never provided his prior express written consent to receive calls from neither Defendant Sunset West nor Defendant Quintessa.

18.     Despite this, Defendant Quintessa, as part of a telemarketing campaign Sunset West hired it to perform, sent Plaintiff at least three pre-recorded telemarketing calls on April 20, 2024, from the Caller ID 818-764-0085.

19.     The pre-recorded telemarketing calls all played an identical prerecorded message.

20.     This message was voiced in the same voice and played the same exact scripted message, stating that the caller had information that the Plaintiff had been "involved in an accident in the last two years" for which he had "not been paid" and asked if he wanted to speak with someone about making a legal claim for compensation.

21.     The Plaintiff interacted with the recorded message to identify the caller calling him illegally with an anonymous pre-recorded message by interacting with the robot.

22.     The Plaintiff was then connected to an individual who works for Quintessa, who stated they were from the "injury help network. This individual asked Plaintiff about accidents and provided a call back number of 888-306-5365.

23.     This Quintessa employee on the April 20 call asked the Plaintiff for details about the accident in which he was involved. This was done, upon information and belief, at Sunset West's direction, so that Sunset West could ascertain and purchase only those leads which met its criteria.

24.     Moreover, this unnamed individual confirmed that they called the Plaintiff's cellular telephone number (818) XXX-XXXX with the pre-recorded message.

25.     Upon information and belief, "injury help network" is a D/B/A used by the Defendant Quintessa.

26.     Thereafter, that number was called to ascertain information as to who was calling Mr. Fabricant illegally. The individuals stated they were from the "injury help network," and relentlessly sent text messages and voicemails, including from the phone number 805-892-6365 and providing the callback number of 888-501-1788.

27.     The text message, which, upon information and belief was sent by Quintessa, stated "Hello, this is Faith, your Follow Up Friend with The Injury Claim Network. You were speaking with one of our representatives regarding the accident you were involved in. My direct number is 888-501-1788. Over the next 14 days, I will be following up with you regarding any questions you may have. The law firm will be investigating your potential case and after accepting your case they will be pulling the police report, speaking with the insurance company, and setting you up with the treatment necessary, amongst many other things. The law firm's name is Sunset West Legal Group. The main office number is 310-282-8888, and the website is https://www.sunsetwestlg.com/.

If you have any questions or concerns don't hesitate to call me directly or text me here. I look forward to assisting you throughout the process. Have a good day!"

28.   This text message in particular was sent, understood, and meant to any reasonable person that Quintessa was acting as an agent for Sunset in onboarding a potential client and processing a legal personal injury claim.

29.   Furthermore, Quintessa evidently had the authority to sign up clients using Sunset's retainer agreement.

30.   Defendant Sunset was therefore identified as the law firm that hired Quintessa to make the illegal calls for it and generate the Plaintiff's lead.

31.   Defendant Sunset continued to call the Plaintiff, including after an attorney for Defendant Sunset responded to counsel for Plaintiff's request for an investigation as to why the Plaintiff continued to receive illegal calls on April 22. Counsel for Defendant Sunset assured counsel that the Plaintiff would receive no further calls.

32.   Unsurprisingly, the calls from Sunset continued. For example, Sunset called the Plaintiff at 4:29 PM on April 23, 2024 from the caller ID 424-375-6809.

33.   Defendant Sunset also sent the Plaintiff a text message on April 23, 2024 from the number 405-977-4484 with Defendant Sunset's website, sunsetwestlg.com.

34.     Defendant Sunset ratified Quintessa's conduct by accepting the lead and referral generated as a result of Quintessa's illegal telemarketing conduct.

35.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

36.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

37.     The FCC has instructed that sellers such as Sunset may not avoid liability by outsourcing telemarketing to third parties, such as Quintessa:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

38.     In 2013, the FCC held that a corporation or other entity that contracts

out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

39.    Sunset is liable for telemarketing calls placed by Quintessa and transferred to Sunset to generate customers for Sunset, including the Plaintiff.

40.    Sunset was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and get clients in the door who had already signed and executed retainer agreements with Sunset, so it hired Quintessa, as Quintessa openly advertises this process as its specialty.

41.    To do so, it hired Quintessa to orchestrate an *en masse* telemarketing campaign.

42.    Sunset controlled the day-to-day activities of Quintessa by providing the specific criteria for the clients it would accept and required its vendors, including Quintessa, to adhere to those criteria.

43.    For instance, Sunset directed and authorized Quintessa to intake and provide retainers to clients and for Quintessa to represent Sunset in such contractual negotiations on Sunset's behalf.

44.    Sunset authorized Quintessa to use the Sunset name, authorized Quintessa representatives to state that they were going to receive calls from Sunset and inform potentially interested persons that Sunset would handle the

administrative aspects of the legal claim, like obtaining police reports and other records.

45.     Sunset would only compensate Quintessa if Quintessa provided Sunset with a client who had signed Sunset's retainer agreement and otherwise met the criteria that Sunset set.

46.     Sunset also could have prohibited Quintessa from using pre-recorded messages to generate leads.

47.     It did not.

48.     Finally, Sunset could have terminated Quintessa once it learned of Quintessa's illegal marketing conduct.

49.     It did not.

50.     This conduct is especially alarming because Quintessa is a habitual offender that is well known in the TCPA space, having been sued multiple times for using prerecorded messages to generate leads in violation of the TCPA.

51.     A reasonable seller would investigate why the telemarketers it has hired to generate leads are being sued for illegal lead generation conduct.

52.     Moreover, a reasonable seller would also investigate into the reasons why their marketer would be calling numbers using highly illegal prerecorded e messages.

53.     Indeed, Sunset could have investigated if the leads it received were

generated based on prerecorded calls, whether the leads purchased were legitimate, or if Quintessa was using prerecorded messages at all.

54.    It did not.

55.    Sunset hired Quintessa without a proper investigation and did not terminate them when they were informed of Quintessa's illegal calling conduct.

56.    As such, they knowingly ratified Quintessa's conduct.

57.    Sunset accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

58.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

59.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

60.    Plaintiff never provided his consent or requested the calls.

61.    The calls were all unwanted, nonconsensual encounters.

62.    Plaintiff and all members of the Class, defined below, have been

harmed by the acts of Defendants because their privacy has been violated and they

were annoyed and harassed. In addition, the calls occupied their telephone lines,

storage space, and bandwidth, rendering them unavailable for legitimate

communication, including while driving, working, and performing other critical

tasks.

## V.   CLASS ACTION ALLEGATIONS

63.   <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3),

Plaintiff bring this case on behalf of the Class (the "Class") defined as follows:

> **Robocall Class:** All persons within the United States: (1) to whose
> cellular telephone number (2) Sunset (or an agent acting on behalf of
> Sunset) placed a call (3) within the four years prior to the filing of the
> Complaint (4) using a pre-recorded message.

64.    Excluded from the Class are counsel, Defendants, any entities in

which Defendants have a controlling interest, Defendants' agents and employees,

any judge to whom this action is assigned, and any member of such judge's staff

and immediate family.

65.   The Class, as defined above, is identifiable through telephone records

and telephone number databases.

66.   The potential members of the Class likely number at least in the

hundreds because of the *en masse* nature of telemarketing calls.

67.   Individual joinder of these persons is impracticable.

68.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

69.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

70.     Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

71.     This class action complaint seeks injunctive relief and money damages.

72.     There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

a.      whether Defendants, acting either directly or vicariously, systematically made pre-recorded telemarketing calls;

b.      whether Defendant Sunset is vicariously liable for any calls placed by telemarketing vendors, like Quintessa, together with the correspondent degree of liability as an among themselves;

c.      whether Defendants, acting either directly or vicariously, made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

d.      whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

73.      Plaintiff's claims are typical of the claims of the Class.

74.      Plaintiff's claims, like the claims of Class, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

75.      Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

76.      A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly

more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

77.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(b)(3)**
**(On Behalf of Plaintiff and the Pre-Recorded Call Class)**

78.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

79.     The foregoing acts and omissions of the Defendants, and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by

making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class delivering pre-recorded messages.

80.    The Plaintiff is seeking to hold Sunset vicariously liable and Quintessa directly liable for the conduct alleged.

81.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

82.    If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

83.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

      A.     Certification of the proposed Class;

      B.     Appointment of Plaintiff as representative of the Class;

      C.     Appointment of the undersigned counsel as counsel for the Class;

      D.     A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

      E.     An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future;

      F.     An award to Plaintiff and the Class of damages, as allowed by law; and

      G.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.      DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## VII.  SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has

been obtained from each of its other signatories.


RESPECTFULLY SUBMITTED AND DATED this 1st day of August,

2024.



/s/ Dana J. Oliver

Dana J. Oliver (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, California 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

/s/ Andrew Roman Perrong

Andrew Roman Perrong (*PHV*)
a@perronglaw.com
PERRONG LAW, LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Telephone:  (215)225-5529 (CALL-LAW)
Facsimile:  (888)329-0305


*Attorneys for Plaintiff and the Proposed
Class*