SHARON A. URIAS (SBN 180642)
sharon.urias@gmlaw.com
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 480.306.5458

JEFFREY GILBERT (*admitted pro hac vice*)
jeffrey.gilbert@gmlaw.com
600 Brickell Avenue, Suite 3600
Miami, FL 33131
Tel. 305.789.2761

*Attorneys for Defendants Sunset West Legal Group, PC
and Quintessa LLC d/b/a The Injury Help Network*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNSET WEST LEGAL GROUP, PC and QUINTESSA LLC d/b/a THE INJURY HELP NETWORK,<br><br>Defendants. | Case No.: 2:24-cv-04264-FLA-MAA<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANTS/COUNTERCLAIM PLAINTIFFS SUNSET WEST LEGAL GROUP, PC'S AND QUINTESSA LLC'S AMENDED AFFIRMATIVE DEFENSES AND COUNTERCLAIM** |

## AMENDED AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiff, Defendants incorporate the affirmative defenses asserted in their Answer and Affirmative Defenses [D.E. 33], and hereby plead the following additional defense to Plaintiff's First Amended Complaint. Defendants reserve the right to plead additional defenses at such time and to such extent as warranted by investigation, discovery, and the factual developments in this Action.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims are the product of a fraudulent scheme against Defendants to invite the calls that were allegedly made to his telephone number, thereby enabling him to file this suit seeking thousands in damages under the TCPA. *See* Amended Complaint, *generally*. Plaintiff called Quintessa first—*prior* to the calls alleged in the Amended Complaint—to have certain numbers placed on Quintessa's internal "do not call list." *See id.* at ¶¶ 11-13. A few days after Plaintiff's calls, a woman posing as an employee of a "Terry Faber" called in to request an attorney for an accident purportedly suffered by her "boss," engaging Quintessa's representatives and providing a number that was then called back by Quintessa's agents to follow up on Plaintiff's inquiry. *Id.* at ¶¶ 15-25. Upon information and belief, Plaintiff utilized call forwarding technology to have the calls that Defendants placed to the number Plaintiff's agent had provided *forwarded* to numbers that Plaintiff had placed on the do not call list so as to exploit the TCPA's damages provisions. But for Plaintiff's own conduct, in which he orchestrated a scheme to receive telephone calls to manufacture TCPA claims, Plaintiff would never have been contacted by Defendants. Thus, the alleged telephone calls at issue were sent to a telephone number that Plaintiff (through Plaintiff's agent) represented was his own and could be contacted by Defendants, constituting fraud on Plaintiff's behalf.

**<u>COUNTERCLAIM</u>**

Defendants/Counterclaim Plaintiffs Sunset West Legal Group, PC ("Sunset") and Quintessa LLC d/b/a The Injury Help Network ("Quintessa") (collectively, "Counterclaim Plaintiffs"), by and through the undersigned attorneys and pursuant to Rule 13 of the Federal Rules of Civil Procedure, hereby bring this Counterclaim against Plaintiff/Counterclaim Defendant Terry Fabricant ("Counterclaim Defendant"), and state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Defendant/Counterclaim Plaintiff Sunset is a professional corporation organized under the laws of the State of California with offices located at 10880 Wilshire Blvd, Suite #2100, Los Angeles, CA 90024.

2. Defendant/Counterclaim Plaintiff Quintessa is a limited liability company organized under the laws of the State of Oklahoma with offices located at 3401 NW 63rd Street, Suite 300, Oklahoma City, OK 73116.

3. Plaintiff/Counterclaim Defendant Terry Fabricant is a California citizen over the age of 18 years who is otherwise *sui juris*.

4. This Court has personal jurisdiction over Counterclaim Defendant because he submitted to the original jurisdiction of this Court by initiating this action and seeking affirmative relief therein.

5. This Court has subject matter jurisdiction over the claims raised within this Counterclaim because such claims form part of the same case and/or controversy alleged in Counterclaim Defendant's initial pleading in this action, which matured after the Counterclaim Plaintiffs served their Answer and Affirmative Defenses in this action.

6. Venue is proper in this Court as Counterclaim Defendant has submitted to venue laying in this Court and the acts or omissions giving rise to the claims asserted herein occurred in this District.

**FACTUAL ALLEGATIONS**

7. Upon information and belief, Counterclaim Defendant (and individuals acting under his direction) utilizes several different telephone numbers, possibly by means of call forwarding, including: (818) 421-1818, (818) 266-1083, and (805) 304-0318.

8. At 4:38 PM on April 19, 2024, Counterclaim Defendant initiated the first ever contact between the parties by placing a call from the number (818) 421-1818 to Quintessa at (855) 705-0232.

9. The call was abandoned, as Counterclaim Defendant hung up while waiting on hold for one of Quintessa's agents to answer.

10. Immediately after Counterclaim Defendant hung up, a text message was sent to the number that Counterclaim Defendant had just called in from, apologizing for not answering Counterclaim Defendant's call and stating that a call back would be placed as soon as an agent was available.

11. A few minutes later at 4:44 PM, Quintessa called Counterclaim Defendant back at (818) 421-1818 due to the abandoned call. Upon answering, Counterclaim Defendant feigned discontent at having received the call, asking for the identity of the calling party and stating that "you guys must get sued like crazy for making these telemarketing calls on people who are on the Do Not Call List." Quintessa's agent told Counterclaim Defendant that if he wanted to not be called, to simply say so; Counterclaim Defendant angrily indicated that he did not want to be called again, whereupon the agent informed Counterclaim Defendant that his number will no longer be called. The agent complied, and Quintessa's records show that no further outbound calls were ever placed to (818) 421-1818.

12. Immediately thereafter, at 4:46 PM, Counterclaim Defendant called Quintessa from a different number, (818) 266-1083, and was connected with a different agent. Counterclaim Defendant then asked if he could have a few numbers placed on Quintessa's "do not call list," those numbers being (818) 709-0810 and (818) 266-1083.

13. The agent complied, and indeed, Quintessa's records show that no outbound call was ever placed to either of those numbers.

14. Two days later, on April 21, 2024, at 8:19 AM, Counterclaim Defendant placed another call to Quintessa, this time from the number (818) 421-1818 (the same number Counterclaim Defendant previously asked to be placed on Quintessa's Do Not Call List). In this call, Counterclaim Defendant stated that he "received a call from this number the other day, and we talked a little bit about the

accident." However, Quintessa has no record of any earlier call between itself and Counterclaim Defendant other than those described above, and certainly none with the content that Counterclaim Defendant represented as having occurred prior to this call.

15. The next day, on April 22, 2024, at 9:35 AM, a woman called Quintessa from the number (805) 304-0318, claiming to be calling on behalf of her "boss." When the agent asked the woman to give him the number that her supposed boss had called in from, the woman had no answer, but instead asked if the agent had anyone in Quintessa's files by the name of "Terry"—the same name as Counterclaim Defendant. When the agent stated that he would require a last name or a phone number, the woman hesitated and said that she would need to get this information and call him back. She then abruptly ended the call.

16. Minutes later, at 9:38 AM, the same woman called Quintessa back from the same number, telling the new agent who answered that she was looking for the name of the lawyer that had been assigned to her case, but noting that "didn't call from this phone" and offering to give the agent the number she "called from initially." She gave that number as being (818) 917-9244.

17. The agent told the woman that there was no information under that number, prompting the agent to intake the woman's information in order to find her an attorney for her case.

18. The woman told the agent that the name of the person she was calling on behalf of was an individual named "Terry Faber" with the phone number (818) 917-9244. She then proceeded to give details about the alleged accident involving "Terry Faber," ultimately identifying herself as "Lisa" and simply stating that she "works for him" without any further elaboration.

19. The call disconnected, prompting Lisa to call back immediately from the same number at 9:51 AM. Lisa asked if the agent could email or text her the remaining intake questions, stating that her "boss" Terry wanted to see the questions

himself. The agent declined and said there was no means for her to do so, at which point Lisa stated that she would just have to call back later.

20. Indeed, Lisa called back just a couple minutes later at 9:53 AM, and happened to be reconnected to the same agent as before. The agent and Lisa then continued completing the intake process, until the agent stated that she would need to speak to Terry to finalize the intake. Lisa stated that "if you could give me the information that I'm requesting for him [*i.e.*, the name and the number of the attorney he was matched with], he would be happy to answer any of your questions." The agent told Lisa that Terry had been matched with Sunset, at which point Lisa said that she would have Terry call her back to answer the agent's questions. The agent asked Lisa to wait on hold, whereupon the call then disconnected.

21. About half an hour after the call disconnected, at 10:34 AM, the agent that Lisa had spoken to called the number purportedly belonging to "Terry Faber" and which supposedly had been the number that Terry Faber had allegedly used to place his initial call to Quintessa per Lisa's telling: (818) 917-9244.

22. The agent asked if Terry was there, and a woman with a voice identical to Lisa's responded by saying "he's not available, is there something I can help you with?" When the agent asked if the speaker was Lisa, the woman said that her name was "Annette" and claimed that "this is a door repair company." When the agent attempted to confirm that there was nobody by the name of Terry Faber present, the woman hesitated but said, "No, not…not at this…not right…not in this office, no." The call then ended.

23. At 12:10 PM, Quintessa texted the number Lisa had called from earlier, (805) 304-0318, following up on the earlier communications.

24. Lisa asked if the text was from Sunset, and acknowledged in follow-up texts that she had spoken with Leslie (the agent who had performed the intake earlier that day), and that Sunset had been "calling the number back thats [sic] forwarded to office."

25. Quintessa made six (6) further outbound call attempts to the number Lisa had called in from, (805) 304-0318, but the calls went unanswered.

26. Counterclaim Plaintiffs never heard from Counterclaim Defendant, Lisa, or "Terry Faber" again after April 22, 2024.

27. However, on May 22, 2024, Counterclaim Defendant filed the instant action in the Central District of California, attempting to bring claims pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), falsely claiming that Counterclaim Plaintiffs violated the TCPA by placing "pre-recorded telemarketing calls" to Counterclaim Defendant's cellular telephone.

28. Counterclaim Defendant is a prolific plaintiff, having filed no fewer than forty-four (44) TCPA-related complaints in this district alone since the beginning of 2021.

29. Quintessa and Sunset are therefore simply the latest target of Counterclaim Defendant, who sought to enrich himself by concocting an elaborate—and fraudulent—scheme to have Counterclaim Plaintiffs place calls to his cellular telephone in such a manner that would allow him to cynically exploit the TCPA's damages provisions for his own pecuniary gain.

30. This scheme entailed that Counterclaim Defendant would first call Quintessa in order to have certain numbers registered on Quintessa's internal "do not call list." Then, he and his accomplice "Lisa" contacted Quintessa and initiated a fraudulent request to be connected to an attorney, which ultimately happened to be Sunset, in order to provide legal assistance for an alleged car accident involving Counterclaim Defendant that never actually took place—thereby inviting the communications from Counterclaim Plaintiffs that Counterclaim Defendant deliberately misrepresented as being illegal telemarketing calls that entitle him to thousands of dollars in damages under the TCPA.

31. Moreover, Quintessa's internal records show that contrary to the allegations in the Complaint (and the First Amended Complaint), no outbound call

was *ever* placed to the numbers that Counterclaim Defendant had requested not to be called ((818) 709-0810 and (818) 266-1083), nor to the number that Counterclaim Defendant had initially called in from ((818) 421-1818).

32. Thus, to the extent that any calls were ever placed to those numbers, it was not the result of Quintessa dialing any numbers that it had been advised not to call by Counterclaim Defendant, but rather the result of other numbers having been dialed and such calls then forwarded to telephones with those numbers in the manner Lisa described via text to Quintessa.

33. Counterclaim Plaintiffs are resultingly the victims of an attempt by Counterclaim Defendant to defraud them by abusing the statutory protections Congress enacted through the TCPA, thereby wasting Counterclaim Plaintiffs' time resources, as well as those of this Court, in the process.

34. Counterclaim Plaintiffs retained the services of the undersigned attorneys to contest Counterclaim Defendant's frivolous claims, and is obligated to pay its attorneys a reasonable fee for their ongoing services rendered in connection with this action, plus all other costs incurred in this action.

35. All conditions precedent to the institution and maintenance of these counterclaims have been performed, have occurred, or have been waived.

## COUNT I – FRAUD

36. Counterclaim Plaintiffs incorporate the foregoing Paragraphs 1 through 35 as if fully set forth herein.

37. Counterclaim Defendant, through his agent "Lisa," misrepresented that he had allegedly been injured in an automobile accident in order to initiate the communications of which he now complains.

38. Counterclaim Defendant was fully aware of the falsity of these representations and never intended to seek a personal injury attorney through Quintessa's hotline because he had no need for one.

39. Counterclaim Defendant intended to deceive Quintessa's agents into believing that an individual named Lisa was calling on behalf of her "boss" in order to procure the assistance of an attorney, but only as a ruse to induce Quintessa into dialing the numbers that Lisa had provided—which were then forwarded to the numbers that Counterclaim Defendant had earlier requested to be placed on Quintessa's internal "do not call list."

40. Counterclaim Plaintiffs reasonably relied on these statements, believing that Counterclaim Defendant (specifically, his agent Lisa) was simply one of the many individuals calling in to receive assistance in procuring legal representation, not realizing that Counterclaim Defendant's true goal was to falsely portray their attempts to call him (and Lisa) back as unlawful telemarketing calls under the TCPA.

41. As a direct and proximate result of Counterclaim Defendant's misrepresentations, concealment, and fraudulent behavior, Counterclaim Plaintiffs suffered harm and incurred substantial compensatory damages caused by their reliance on Counterclaim Defendant's misrepresentations, concealment, and fraudulent behavior by, among other things, expending employee time and company resources engaging with Counterclaim Defendant to help him with a motor vehicle accident claim that turned out to be fictious and fraudulently concocted, as well as being forced to defend themselves against the frivolous and fabricated claims brought forth in this action.

42. Accordingly, Counterclaim Plaintiffs are entitled to substantial compensatory damages in an amount to be proven at trial, in addition to pre- and post- judgment interest.

43. Furthermore, the fraud perpetrated by Counterclaim Defendant was intentional and malicious, and as a result, Counterclaim Plaintiffs are entitled to substantial punitive damages in addition to all attorneys' fees and costs that they incur as part of this lawsuit, as well as pre- and post-judgment interest.

## COUNT II – FRAUDULENT OMISSION

44. Counterclaim Plaintiffs incorporate the foregoing Paragraphs 1 through 35 as if fully set forth herein.

45. Counterclaim Defendant consciously and deliberately concealed the fact that he was utilizing call forwarding technology that would reroute calls made to numbers not on Quintessa's "do not call list" to numbers that he had placed on such list.

46. Counterclaim Defendant had a duty to disclose this fact in order to permit Counterclaim Plaintiffs to comply with his request (and the TCPA) to not have calls sent to those particular telephone numbers.

47. Counterclaim Defendant intentionally concealed and suppressed this fact with the intent to defraud Counterclaim Plaintiffs, in particular, to perpetrate the above-described scheme and induce Counterclaim Plaintiffs into dialing the numbers that would then be "placed" to the banned numbers via call forwarding technology.

48. Counterclaim Plaintiffs were unaware of this fact, and would have been more than willing to cease all communications with Counterclaim Defendant had they either simply been provided with all of the telephone numbers Counterclaim Defendant had been using, or had otherwise known that Counterclaim Defendant was using call forwarding technology to invite the calls of which he now complains.

49. As a direct and proximate result of Counterclaim Defendant's misrepresentations, concealment, and fraudulent behavior, Counterclaim Plaintiffs suffered harm and incurred substantial compensatory damages caused by their reliance on Counterclaim Defendant's misrepresentations, concealment, and fraudulent behavior by, among other things, expending employee time and company resources engaging with Counterclaim Defendant to help him with a motor vehicle accident claim that turned out to be fictious and fraudulently concocted, as well as being forced to defend themselves against the frivolous and fabricated claims brought forth in this action.

50. Accordingly, Counterclaim Plaintiffs are entitled to substantial compensatory damages in an amount to be proven at trial, in addition to pre- and post- judgment interest.

51. Furthermore, the fraud perpetrated by Counterclaim Defendant was intentional and malicious, and as a result, Counterclaim Plaintiffs are entitled to substantial punitive damages in addition to all attorneys' fees and costs that they incur as part of this lawsuit, as well as pre- and post-judgment interest.

**WHEREFORE**, Counterclaim Plaintiffs Sunset West Legal Group, PC and Quintessa LLC d/b/a The Injury Help Network respectfully request that this Court enter judgment in their favor and against Counterclaim Defendant Terry Fabricant, and award Counterclaim Plaintiffs the following relief:

A.  Compensatory damages in an amount to be proven at trial;

B.  Punitive damages for Counterclaim Defendant's willful, fraudulent, or reckless conduct in an amount to be proven at trial;

C.  Attorneys' fees and costs as permitted by applicable law;

D.  Any further relief this Court deems just and proper.

Dated: January 31, 2025            Respectfully Submitted,

**GREENSPOON MARDER LLP**

 */s/ Jeffrey Gilbert*
Sharon A. Urias
Jeffrey Gilbert (*admitted pro hac vice*)

*Attorneys for Defendants Sunset West Legal Group, PC and Quintessa LLC d/b/a The Injury Help Network*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

                                        */s/ Jeffrey Gilbert*